**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**VALERIE CHAVEZ,**

**Plaintiff,**

**vs.** **Civ. No. 25-987 JFR**

**FRANK BISIGNANO, Commissioner of Social Security,**

**Defendant.**

**MEMORANDUM OPINION AND ORDER**[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 11)[2] filed December 9, 2025, in connection with Plaintiff's *Motion to Reverse and Remand,* filed January 8, 2026. Doc. 13. Defendant filed a Response on March 26, 2026. Doc. 19. Plaintiff filed a Notice of Completion of Briefing on June 4, 2026. Doc. 21. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's Motion is not well taken and is **DENIED**.

## I. Background and Procedural Record

Plaintiff Valerie Chavez (Ms. Chavez) alleges she became disabled on February 2, 2021, at the age of forty-eight, because of schizophrenia, post-traumatic stress disorder, depression, liver disease, bone spurs (heel, foot), hand/wrist/arm problem, hip problem, and carpal tunnel.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 6, 8, 10.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 11), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

Tr. 60. Ms. Chavez completed school through the ninth grade. Tr. 259. Ms. Chavez worked as a housekeeper. Tr. 260, 267-68. Ms. Chavez stopped working on February 2, 2021, "because of other reasons." Tr. 258-59.

On March 24, 2021, Ms. Chavez protectively filed for Social Security Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* Tr. 17, 201-215, 219-22. On September 14, 2021, Ms. Chavez's application was denied. Tr. 59, 60-64, 104-07. On October 19, 2023, it was denied again at reconsideration. Tr. 65-93, 94, 126-30. Ms. Chavez requested a hearing and Administrative Law Judge (ALJ) David Benedict held a hearing on September 25, 2024. Tr. 36-58. Ms. Chavez appeared telephonically with attorney Brooks Hughes.[3] *Id.* On November 4, 2024, ALJ Benedict issued an unfavorable decision. Tr. 14-30. On August 5, 2025, the Appeals Council denied Ms. Chavez's request for review. Tr. 1-5.

On October 9, 2025, Ms. Chavez filed a Complaint seeking judicial review of the Commissioner's final decision. Doc. 1.

## II. <u>Applicable Law</u>

### A. <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the

[3] Ms. Chavez is represented in these proceedings by Attorney Zachary Clayton Mitzner. Doc. 1.

familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of his medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.
>
> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.
>
> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a). "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.* "Gainful work activity is work activity that you do for pay or profit." 20 C.F.R. §§ 404.1572(b).

claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

**B. Standard of Review**

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" Langley, 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency. *Langley*, 373 F.3d at 1118.

## III. Analysis

The ALJ determined that Ms. Chavez has not engaged in substantial gainful activity since March 24, 2021, her application date. Tr. 19. The ALJ found that Ms. Chavez has severe impairments of cervicalgia, myalgia, bilateral foot spurs and contractures, diabetes mellitus, obstructive sleep apnea, hypertension, obesity, major depressive disorder, anxiety, unspecific trauma and symptom-related disorder, somatic symptom disorder, unspecific neurocognitive disorder, borderline intellectual functioning, and stimulant use disorder in sustained remission. *Id.* The ALJ also found that Ms. Chavez has nonsevere impairments of asthma and cystitis. Tr. 20. The ALJ determined that Ms. Chavez's impairments do not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. Tr. 20-23. Accordingly, the ALJ proceeded to step four and found that Ms. Chavez has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except:

> she can lift 50 pounds occasionally and 25 pounds frequently, stand/walk for a total of six hours in an eight-hour workday and sit for six hours in an eight-hour workday. She can frequent[ly] push, pull, and operat[e] foot controls with the bilateral lower extremities. She can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can understand, remember, and carry out simple instructions, maintain attention and concentration for no longer than two-hour blocks, and occasionally interact with supervisors, coworkers, and the general public.

Tr. 23-28. The ALJ determined that Ms. Chavez had no past relevant work and limited education. Tr. 28. The ALJ determined that through the date last insured, considering Ms. Chavez's age, education, work experience, and residual functional capacity, that there are jobs that exist in significant numbers in the national economy that Ms. Chavez can perform.[5]

[5] The VE expert identified representative occupations of Laundry Aide (DOT code 323.687-010, 56,100 jobs nationally); Counter Supply Worker (DOT code 319.687-010, 35,400 jobs nationally); and Hand Packager (DOT code 920.587-018, 84,300 jobs nationally). Tr. 29.

Tr. 29. The ALJ determined, therefore, that Ms. Chavez has not been under a disability since March 24, 2021, the date her application was filed. Tr. 30.

In support of her Motion, Ms. Chavez argues that the ALJ's consideration of the medical opinion evidence was self-contradictory and improper and resulted in a decision being unsupported by substantial evidence. Doc. 13 at 3-10. For the reasons discussed below, the Court finds that the ALJ properly evaluated the medical opinion evidence and that his determination is supported by substantial evidence.

### A. Relevant Medical Opinion Evidence

#### 1. Victor R. Salgado, M.D.

On April 28, 2023, Ms. Chavez presented to Victor R. Salgado, M.D. for a State agency consultative medical exam. Tr. 466-72. Ms. Chavez alleged disability based on schizophrenia, PTSD, depression, liver disease, bone spurs, hand/wrist/arm problem, hip problem and carpal tunnel. *Id.* Ms. Chavez reported symptoms related to liver disease for approximately one year with no known cause, and symptoms related to bone spurs for approximately four years likely caused by her weight. *Id.* Ms. Chavez reported she could sit for 5-10 minutes, stand for 15 minutes, walk 2 blocks, and lift 10 pounds. *Id.*

On physical exam, Dr. Salgado described Ms. Chavez's general appearance as morbidly obese, appears her stated age, appropriately groomed, slight antalgic gait due to foot pain without use of an assistive device, and in no acute distress. *Id.* Dr. Salgado noted no findings or abnormalities on HEENT, cardiovascular, lung, or abdomen exams. *Id.* Dr. Salgado noted bilateral 1+ pitting edema to the knees with no clubbing or cyanosis. *Id.* On neurologic exam, Dr. Salgado indicated Ms. Chavez was alert, had appropriate eye contact, speech and mood, and that her memory and concentration were normal. *Id.* Dr. Salgado noted Ms. Chavez's muscle

tone and bulk were normal throughout, that her straight leg test was negative bilaterally, and she had a negative Tinel's sign bilaterally. *Id.* Dr. Salgado noted on musculoskeletal exam that Ms. Chavez had 5/5 strength in all extremities and full range of motion. *Id.* Dr. Salgado noted that Ms. Chavez was able to lift, carry and handle light objects; able to squat and rise from position without difficulty; had slight antalgic gait due to foot pain; had difficulty walking on heels and toes due to foot pain L > R; her tandem walking was normal; and Ms. Chavez was able to hop on one foot bilaterally. *Id.*

Dr. Salgado's assessment is as follows:

> 5/5 strength throughout. ROM intact throughout. Negative straight leg test bilaterally. Normal sensory exam. Negative Tinel's sign. No physical signs of chronic liver disease. The claimant did not have physical abnormalities to limit sitting, standing, walking, lifting, carrying, bending, squatting, reaching, handling, feeling, gasping, vision or communication.

Tr. 471. Dr. Salgado assessed no physical limitations in Ms. Chavez's ability to do work-related physical activities. *Id.*

The ALJ found Dr. Salgado's opinion unpersuasive. Tr. 26. The ALJ explained that Dr. Salgado's assessment of no limitations was not supported by Ms. Chavez's slight antalgic gait, difficulty walking on heels and toes, and inability to hop on one foot (sic). *Id.* The ALJ also explained that Dr. Salgado's assessment was inconsistent with Ms. Chavez's obesity, obstructive sleep apnea, and calcaneal spurs. *Id.*

**2. <u>David Braverman, M.D.</u>**

On May 27, 2023, nonexamining State agency medical consultant David Braverman reviewed the medical evidence record at reconsideration. Tr. 83-85. Dr. Braverman assessed that Ms. Chavez had the residual functional capacity to occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk a total of about 6 hours in an 8-hour

workday; sit for total of about 6 hours in an 8-hour workday; and unlimited push and/or pull other than shown for lift and/or carry. *Id.* Dr. Braverman assessed certain postural limitations of occasional climbing of ramps and stairs and never climbing ladders/ropes/scaffolds. *Id.* Dr. Braverman found Ms. Chavez had no manipulative, visual, communicative, or environmental limitations. *Id.*

Dr. Braverman explained:

> 04/28/23 IMCE
> VITALS: BP 143/93 WT 244 RR 24. SNELLEN: OU 20/40.
> PE: morbidly obese. HEENT nml, CV RRR, lungs CTAB abd laparoscopy scars, but soft/NT Extremities: bilateral 1+ pitting edema to the knees, but no clubbing or cyanosis. NEURO: Alert, nml speech & mood, and memory & conc nml. Muscles: strength 5/5 & muscle tone/bulk nml. SLR neg. Msk: FROM of back, shoulders & UEs. Has slight antalgic gait due to foot pain, without the use of an assistive device. Difficulty walking on heels and toes due to foot pain L > R. The claimant was able to walk on heels and toes. Tandem walking was normal, and claimant could hop on one foot bilaterally. ROM upper extremities intact. Negative Tinel's sign bilaterally. Normal sensory exam. Normal reflexes.
> MSS: The claimant did not have physical abnormalities to limit sitting, standing, walking, lifting, carrying, bending, squatting, reaching, handling, feeling, grasping, vision or communication.
>
> RECON: MER and nonmedical evidence reviewed for RFC.

Tr. 85.

The ALJ explained as to Dr. Braverman's assessment:

> David Braverman, M.D., limits the claimant to medium work lifting and carrying 50 pounds occasionally and 25 pounds frequently, sitting for about six hours in an eight-hour workday, and standing/walking for a total of six hours in an eight-hour workday (3A). Dr. Braverman says that the claimant can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds.
>
> Dr. Braverman bases this assessment mainly on the consultative evaluation by Dr. Salgado, who finds difficulty walking on heels and toes, a slightly antalgic gait, and inability to hop on one foot. The residual functional capacity for medium exertional work is generally consistent with the medical evidence showing antalgic or unsteady gait [], and mostly normal heart and lung function [] and mostly normal strength, sensation, reflexes, and range of motion []. However, there are additional limitations to account for some of the claimant's allegations; due to bilateral heel

> spurs, she can frequent[ly] push, pull, and operat[e] foot controls with the bilateral lower extremities.

Tr. 28 (citations omitted).

**3. <u>James W. Schutte, Ph.D.</u>**

On September 18, 2023, Ms. Chavez presented to James W. Schutte, Ph.D., for a consultative mental status examination. Tr. 478-82. Dr. Schutte conducted a mental status examination and administered the (1) Rey 15-Items Test; (2) Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV); (3) Wechsler Memory Scale-Fourth Edition (WMS-IV); and (4) Trail-Making Test. *Id.*

Dr. Schutte noted on mental status exam that Ms. Chavez was oriented in terms of person, place, and partially oriented to time; she knew the current day, month, and year, but gave the date as the 12th; she was able to provide basic personal information; her cognitive functions appeared grossly intact and she was alert and responsive to her surroundings; her speech was clear and comprehensible with no apparent deficits; her attention and concentration appeared adequate for the tasks at hand; no hyperactivity; her long-term memory seems grossly intact for basic autobiographical information; her immediate memory was measured during clinical interview to be grossly intact; she recalled fifteen of fifteen items shown and asked to remember; she recalled three out of three words immediately and two after delay; her thought processes were not delusional; she did not appear to be attending to internal stimuli during the evaluation; her mood was anxious but her affect was appropriate to the situation; her eye contact was fair; and she was cooperative and appeared adequately motivated to perform the testing tasks. *Id.*

Based on his mental status exam and test results, Dr. Schutte diagnosed (1) major depressive disorder; (2) unspecific trauma- and symptom-related disorder; (3) somatic symptom disorder; (4) unspecific neurocognitive disorder; (5) stimulant use disorder, in sustained

remission; (6) borderline intellectual functioning; and (7) "[c]hronic fatigue syndrome, reported arthritis, carpal tunnel syndrome, bone spurs in feet, hepatitis." *Id.* Dr. Schutte summarized his findings as follows:

> Valerie Chavez is a 50-year old Hispanic woman with an alleged disability of schizophrenia, PTSD, depression, liver disease, bone spurs (heels, foot), hand/wrist/arm problem, hip problem and carpal tunnel. She reported symptoms of depression and anxiety, as well as cognitive complaints, hallucinations, and a prior history of methamphetamine dependence. Available medical records note chronic fatigue syndrome, amongst other conditions. She scored in the range of borderline intellectual functioning as measured by the WAIS-IV Full Scale IQ. The claimant's memory skills were measured to be within the borderline to low average range, with relative weakness in immediate memory. The claimant's memory scores are lower than what her IQ scores would predict in the areas of auditory and immediate memory. As such, there appears to be a memory deficit. Psychomotor speed was measured to be above average, while her cognitive flexibility was measured to be average. With respect to adaptive behavior, she has some reported limitations in social/interpersonal skills, work, and use of community resources. Due to reported psychotic symptomatology and a neurocognitive disorder, this claimant will require assistance to manage any funds which may be payable to her. The claimant's ability to understand and remember basic instructions seems mildly impaired due to a neurocognitive disorder. Her ability to concentrate and persist at tasks of basic work seems moderately impaired due to a neurocognitive disorder, borderline intellectual functioning, depression, somatic symptom disorder, and a trauma-related disorder. Her ability to interact with the general public and/or co-workers seems moderately impaired due to depression and a trauma-related disorder. Her ability to adapt to changes in the workplace seems moderately impaired due to depression, a trauma-related disorder, somatic symptoms disorder, a neurocognitive disorder, and borderline intellectual functioning.

*Id.*

The ALJ found Dr. Schutte's opinion persuasive except for the moderate limitation in adapting to changes in the workplace. Tr. 27-28. He explains that:

> the testing supports limits with information, concentration, persistence, and pace. The clinical observations regarding the claimant's mood also support some limits with social interaction. This is also generally consistent with the medical evidence showing that the claimant can be depressed, anxious, sad, and irritable. However, some notes also show normal mood or appropriate mood, affect, and behavior. Based on the overall record, the claimant does not have more than moderate mental limitations.

Tr. 27.

**B. Arguments**

Ms. Chavez argues that having found Dr. Salgado's opinion not persuasive, the ALJ then "inexplicably found that Ms. Chavez could perform medium work, and he did not at all explain how those reduced gait findings impacted the RFC in any way." Doc. 13 at 5-6. Ms. Chavez argues the fact of her unsteady gait precludes her ability to perform medium work because "in most medium jobs, being on one's feet for most of the workday is critical." *Id.* Ms. Chavez argues that the ALJ "should have shown consideration of how the antalgic gait-related findings would impact the standing and walking requirements of medium work," but instead "made a conclusory statement that Dr. Salgado's opinion was not supported due to the limitations found within the gait-related examination findings, and then failed to explain to this Court how those same supported gait findings impacted RFC." *Id.*

Ms. Chavez argues that the ALJ's evaluation of Dr. Braverman's opinion is equally insufficient. Doc. 13 at 9-10. Ms. Chavez argues that the ALJ makes the "same baffling statement as before with Dr. Salgado, stating that a finding of antalgic or unsteady gait somehow supports medium work." *Id.* Ms. Chavez argues that "[d]ifficulties with gait and medium work simply do not go hand in hand." *Id.* Ms. Chavez argues that the ALJ's findings here, therefore, cannot be supported by substantial evidence. *Id.*

As to the ALJ's evaluation of Dr. Schutte's opinion, Ms. Chavez argues that the ALJ fails to provide any true explanation at all why Dr. Schutte's opinion regarding Ms. Chavez's ability to adapt to changes in the workplace was not persuasive. Doc. 13 at 7-9. Ms. Chavez argues that the only piece of evidence the ALJ suggests is that "some notes also show normal or appropriate mood, affect, and behavior," but that comment was only made in relation to the

persuasive limitations he outlined in the preceding sentences. *Id.* Ms. Chavez argues that the ALJ failed to provide an adequate explanation why this limitation was rejected and/or what evidence the ALJ was relying on to reject it. *Id.* Ms. Chavez argues the ALJ's failure to adequately explain this part of Dr. Schutte's opinion is reversible error. *Id.*

The Commissioner contends that the ALJ properly considered and evaluated the medical opinion evidence related to Ms. Chavez's ability to do work-related physical activities. Doc. 19 at 5-8. The Commissioner contends the ALJ found that Dr. Salgado's assessment of no physical limitations was not supported by his examination report or consistent with other evidence. *Id.* The Commissioner contends the ALJ then found that Dr. Braverman's assessment of medium work was supported by Dr. Braverman's review of Dr. Salgado's report and generally consistent with the overall record showing some gait abnormalities but largely normal strength, sensation, reflexes, and range of motion. *Id.* The Commissioner contends the ALJ tempered Dr. Braverman's assessment even further in Ms. Chavez's favor finding additional limitations in the use of her legs to push, pull, and operate foot controls. *Id.* The Commissioner contends the ALJ's RFC tracks Dr. Braverman's assessment of medium work, which limits Ms. Chavez to standing and/or walking (with normal breaks every two hours) for approximately six hours out of an eight-hour workday. *Id.* The Commissioner contends that in so doing, Dr. Braverman, and the ALJ in turn, found that Plaintiff should not perform heavy or very heavy work. *Id.* The Commissioner contends that Ms. Chavez's arguments amount to a request to reweigh the evidence. *Id.*

The Commissioner contends that the ALJ also properly considered the medical opinion evidence regarding Ms. Chavez's ability to do work-related mental activities. *Id.* The Commissioner contends that the ALJ found Dr. Schutte's opinion persuasive except for his

assessment of a moderate limitation in adapting to workplace changes. *Id.* The Commissioner contends that the ALJ similarly found nonexamining State agency psychological consultant Karen Ying, M.D.'s opinion persuasive except for her assessment of mild limitation in understanding, remembering, and applying information.[6] *Id.* The Commissioner contends that the ALJ ultimately concluded that Ms. Chavez should be limited to simple work with no more than occasional interactions with others. *Id.* The Commissioner contends in this way, the ALJ "adopted a middle ground" between the conflicting medical source statements "without fully embracing" any single assessment. *Id.* (citation omitted). The Commissioner contends, therefore, that the ALJ's evaluation of Dr. Schutte's findings considered both supportability and consistency, as required. *Id.*

The Commissioner further contends the ALJ noted that while Ms. Chavez appeared anxious during the exam, she was cooperative and responsive to her surroundings and demonstrated grossly normal cognitive functioning. *Id.* The Commissioner contends the ALJ discussed that while some exams in the record showed Ms. Chavez had a sad, anxious, or irritable mood, others showed a normal or appropriate mood and affect and behavior. *Id.* The Commissioner contends the ALJ also properly considered Ms. Chavez's reported activities in determining she had no more than mild limitations in the broad functional area of adaptation. *Id.* The Commissioner contends that while Dr. Schutte stated Ms. Chavez had some reported limitations in social/interpersonal skills, work, and use of community resources, Ms. Chavez reported elsewhere she was able to drive, manage money, shop in stores, and even do some

---

[6] On October 18, 2023, nonexamining State agency psychological consultant Karen Ying, M.D., reviewed Ms. Chavez's medical evidence record at reconsideration. Dr. Ying Dr. prepared a Psychiatric Review Technique and rated the degree of Ms. Chavez's mental impairments. Tr. 80-81. Dr. Ying also prepared a Mental Residual Functional Capacity Assessment and ultimately assessed that Ms. Chavez can understand simple and detailed instructions and carry them out; can sustain simple and detailed tasks for 40 hours each week; can interact with others in the work setting; and can adapt to changes in a work setting. Tr. 86-89.

caretaking and housecleaning work. *Id.* The Commissioner contends the ALJ's discussion of the evidence, therefore, supports his evaluation of Dr. Schutte's opinion such that his explanations are supported by substantial evidence and sufficient to allow the Court to discern the ALJ's reasoning.

In sum, the Commissioner contends that the ALJ reasonably determined Ms. Chavez's RFC based on the entire record, including the longitudinal medical record and Ms. Chavez's admitted activities. The Commissioner contends that Ms. Chavez's arguments amount to an assertion that the evidence could be interpreted differently, but that the Court may not reweigh the evidence or try the issues de novo in order to advance a different view. *Id.*

**C. Evaluation of Medical Opinion Evidence**

In evaluating the persuasiveness of medical opinions, the SSA considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that support or contradict a medical opinion or finding. 20 C.F.R. § 416.920c(c). An ALJ is always required to explain how he or she considered the first two factors: "[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions ... in your determination or decision." 20 C.F.R. § 416.920c(b)(2); *see also Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *2 (10th Cir. 2022) (unpublished) ("An ALJ must explain how he or she considered the supportability and consistency factors.") (citation and quotation omitted). The ALJ is only required to explain how he or she considered the other three factors if differing medical opinions are equally well-supported and consistent with the record. 20 C.F.R. § 416.920c(b)(3).

As the Tenth Circuit explained,

> "[s]upportability" examines how closely connected a medical opinion is to the evidence and the medical source's explanations: "The more relevant the objective

> medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be." [20 C.F.R.] § 404.1520c(c)(1); *id.* § 416.920c(c)(1). "Consistency," on the other hand, compares a medical opinion to the evidence: "The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be." *Id.* § 404.1520c(c)(2); *id.* § 416.920c(c)(2).

*Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. Jul. 6, 2021) (unpublished) (brackets and ellipses omitted).

While the revised regulations allow the ALJ some discretion in how he articulates his findings on the persuasive value of medical opinion evidence, it provides no leeway as to whether he articulates such findings. *See* 20 C.F.R. § 416.920c(b); (The ALJ "will articulate ... how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record"). In addition, "all [of] the ALJ's required findings must be supported by substantial evidence, and [s]he must consider all relevant medical evidence in making those findings." *Grogan*, 399 F.3d at 1262 (citations and quotation marks omitted). The ALJ's decision must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen*, 436 F.3d at 1165 (quotation omitted).

Judges in this district have found bare conclusions regarding the persuasiveness of a medical opinion insufficient.

> [A] bare conclusion regarding the persuasiveness of a medical opinion does not suffice under 20 C.F.R. § [416.920c]. An ALJ must, at the very least, provide an explanation that allows the reviewing court to follow his reasoning and communicates how he considered the factors of consistency and supportability for each medical source's opinions. *See id.* § [416.920c]. Although the regulation does not prescribe the depth with which an ALJ must discuss the factors of supportability and consistency, the explanation must at least eschew rote analysis and conclusory explanations and discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence . . . .

*Zambrano v. Kijakazi*, No. 20cv1356 KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022) (quotation, alterations, and citation omitted); *see also Frazer v. Kijakazi*, No. 20cv1147 GBW, 2022 WL 682661, at *6 (D.N.M. Mar. 8, 2022) ("An ALJ's failure to provide any reasons for rejecting a medical source opinion beyond stating that it is inconsistent with the record is grounds for remand."); and *Klein v. Kijakazi*, No. 20cv1199 LF, 2022 WL 2827582, at *7 (D.N.M. Jul. 20, 2022) (ALJ finding an opinion "somewhat persuasive" without any explanation is not legally sufficient).

**D. The Court Finds No Error In the ALJ's Evaluation of the Medical Opinion Evidence and the ALJ's Determination Is Supported by Substantial Evidence**

The Court finds that the ALJ properly discussed the factors of supportability and consistency in his evaluation of the medical opinion evidence as he is required to do and that the ALJ's explanations for his findings related to Ms. Chavez's ability to do work-related physical and mental activities are sufficiently specific to enable this Court to determine that the ALJ's decision is supported by substantial evidence.

For instance, the ALJ explained that Dr. Salgado's opinion was not persuasive because it was not supported by certain of his findings on exam, *i.e.,* slight gait and difficulty walking on heels and toes, and also found that Dr. Salgado's opinion was not consistent with medical record evidence related to Ms. Chavez's obesity, sleep apnea, and calcaneal spurts. The record supports these findings. Next, the ALJ explained that Dr. Braverman's opinion limiting Ms. Chavez to medium exertional work with certain postural limitations was persuasive because Dr. Braverman had properly accounted for *all* of Dr. Salgado's exam findings in his review of the medical evidence. The ALJ further explained that Dr. Braverman's opinion was consistent with the medical evidence record at large showing antalgic or unsteady gait, mostly normal heart and lung

function, and mostly normal strength, sensation, reflexes, and range of motion. The record supports these findings. As for Dr. Schutte's opinion, the ALJ explained that it was supported by Dr. Schutte's testing results and clinical observations and also generally consistent with the medical evidence record related to Ms. Chavez's mental status findings of depression, anxiety, sadness, and irritability. The ALJ also explained, however, that Dr. Schutte's opinion was inconsistent with other medical evidence record reflecting normal mental status findings. The record supports these findings. The Court, therefore, finds no error in the ALJ's explanations related to his evaluation of the medical opinion evidence and finds that they are supported by substantial evidence.

Additionally, while Ms. Chavez's argument also focuses largely on what she believes are insufficient limitations related to her unsteady gait, she fails to cite any medical opinion evidence or otherwise in the record to support greater limitations than those the ALJ assessed. There are only two medical opinions in the record related to Ms. Chavez's ability to do work-related physical activities – one of which found no limitations and the other, having fully accounted for Ms. Chavez's "slight antalgic gait," found Ms. Chavez was capable of medium exertional work. The ALJ explained this in evaluating Dr. Braverman's opinion and in making his RFC assessment that Ms. Chavez was capable of medium exertional work. In the absence of evidence to the contrary, the Court finds no error.

In sum, while Ms. Chavez's arguments may show the ALJ could have interpreted the evidence to support a different outcome, they, at most, amount to an invitation to reweigh the evidence, which the Court cannot do. *See Deherrera v. Comm'r, SSA*, 848 F. App'x 806, 808 (10th Cir. 2021) (setting out the reviewing court's standard of review and noting that it does not "reweigh the evidence or retry the case").

## IV. Conclusion

For the reasons stated above, Ms. Chavez's Motion for Remand (Doc. 13) is not well-taken and is **DENIED**.

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**